```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      SOUTHERN DIVISION at LONDON
```

| | |
|---|---|
| PATRICIA HENNESSEY BAUSUM, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:08-296-JMH |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | **MEMORANDUM OPINION AND ORDER** |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

** ** ** ** **

This matter is before the Court on cross motions for summary judgment [Record Nos. 6 and 7][1] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits. Because the Administrative Law Judge ("ALJ") violated the agency's own procedural regulation by failing to fully articulate reasons for discounting the opinion of Plaintiff's treating physician, the Court will grant Plaintiff's motion, deny Defendant's motion, and remand the matter for an appropriate award of benefits.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Patricia Bausum filed an application for disability insurance benefits on September 3, 2005. Plaintiff's application

---

[1] These are not traditional Rule 56 cross motions for summary judgment. Rather, they are procedural devices used by the Court to obtain the views of the parties regarding the sufficiency of the evidence contained in the administrative record developed before the Commissioner.

was denied initially and upon reconsideration. After conducting a hearing, on August 20, 2007, the ALJ issued a decision denying Plaintiff's application for benefits. The ALJ concluded that while suffers from the severe impairment of depression, she has the residual functional capacity ("RFC") to perform her past relevant work as a payroll, accounting, filing or word processing clerk, and thus, is not disabled.

On July 18, 2008, the Appeals Council denied Plaintiff's request for review and Plaintiff appealed to this Court. Plaintiff argues that the ALJ improperly rejected the opinions of her treating physician, Dr. Patel, and failed to give specific reasons for same.

## II. OVERVIEW OF THE ALJ HEARING

In determining whether a claimant is disabled or not, the ALJ conducts a five-step analysis:

> 1.) Is the individual engaging in substantial gainful activity? If the individual is engaging in substantial gainful activity, the individual is not disabled, regardless of the claimant's medical condition.
>
> 2.) Does the individual have a severe impairment? If not, the individual is not disabled. If so, proceed to step 3.
>
> 3.) Does the individual's impairment(s) meet or equal the severity of an impairment listed in appendix 1, subpart P of part 404 of the Social Security Regulations? If so, the individual is disabled. If not, proceed to step 4.

>   4.) Does the individual's impairment(s) prevent him or her from doing his or her past relevant work, considering his or her residual functioning capacity?  If not, the individual is not disabled.  If so, proceed to step 5.
>
>   5.) Does the individual's impairment(s) prevent him or her from performing other work that exists in the national economy, considering his or her residual functioning capacity together with the "vocational factors" of age, education, and work experience?  If so, the individual is disabled.  If not, the individual is not disabled.

*Heston v. Comm'r of Social Security,* 245 F.3d 528, 530 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.,* 14 F.3d 1107, 1110 (6th Cir 1994).

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, *see* 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion. *Landsaw v.*

*Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in failing to afford controlling weight to the opinion of her treating physician, Dr. Patel, and in failing to give specific reasons for discrediting Dr. Patel's opinion. When considering medical evidence, the opinions of treating physicians are given controlling weight if the opinion is "well-supported by medically accepted clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When an ALJ does not give a treating physician's opinion controlling weight, he is required to "give good reasons" why the treating physician's opinion was discounted. 20 C.F.R. § 404.1527(d)(2); *see also Wilson,* at 544. Here, the ALJ failed to explain why he discredited the opinions of Plaintiff's treating physician, and substantial evidence does not support the ALJ's decision that Plaintiff is capable of performing her past relevant work.

4

On February 8, 2006, consulting examiner Dr. Maryman concluded:

> [Plaintiff] should be able to sustain her focus and concentration sufficiently to where she would be able to complete and carry out a work assignment adequately across a routine work schedule. It was thought that she should be able to interact appropriately with fellow workers and supervisors and she did not appear necessarily at this point precluded from being able to interact and deal with the general public, although she would certainly be somewhat more limited in that regard. It also appeared that she should be able to adjust and adapt reasonably well to stressors and pressures associated with a medium to lower stress environment. She may yet be limited, however, in a more fast paced and high pressure work atmosphere.

TR 354-55. On February 9, 2006, Plaintiff consulted with her treating psychiatrist, Dr. Patel. Noting that her affect was intense and her mood was severely depresses, Dr. Patel diagnosed Plaintiff with major depression and assessed a Global Assessment of Functioning ("GAF") of 50.[2] TR 378. On February 21, 2006, non-examining state agency psychologist Dr. Stodola reviewed Dr. Maryman's report and completed a Mental Residual Functional Capacity Assessment ("MRFCA"). Dr Stodola concluded that Plaintiff is moderately limited in her ability to maintain activities of social functioning and in her ability to maintain concentration, persistence, or pace. TR 356-69. Dr. Stodola also reported

---

[2] A GAF rating represents a clinician's judgment of an individual's overall level of functioning. A GAF of 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupation, or school functioning (e.g., no friends, unable to keep a job)." Def's Mot. Summ. J, Ex. 1, Global Assessment of Functioning with Scale.

moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public, and respond appropriately to changes in the work setting.  TR 371-74.

Plaintiff was admitted to Lake Cumberland Regional Hospital for psychiatric care on July 14, 2006, under the care of Dr. Patel. Dr. Patel confirmed his diagnosis of major depressive disorder and again assessed a GAF of 50.  Plaintiff was discharged on July 18, 2006, with directions to follow up with ADANTA and Dr. Patel.  TR 383-91.  Plaintiff complied with her discharge orders and followed up with both Dr. Patel and ADANTA.  Physicians at ADANTA assessed Plaintiff's GAF as 58 in August and September of 2006 (TR 413, 420), but reported that her GAF had decreased to 52 in January of 2007.  TR 468.

On August 9, 2006, non-examining state agency psychologist Dr. Ross reviewed unidentified medical records and completed a MRFCA. Dr. Ross reported the same findings as Dr. Stodola, with the exception of finding that Plaintiff would not be significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms or

perform at a consistent pace without an unreasonable number and length of rest periods. TR 406-07.

Plaintiff's treating psychiatrist, Dr. Patel, completed a MHFCA on October 31, 2006. Dr. Patel reported that the claimant had marked limitations in her ability to relate to other people and to maintain activities of daily living. Dr. Patel reported a slight deterioration in personal habits and an extreme degree of constriction of interests; moderate limitations in Plaintiff's ability to remember work-like procedures and extreme limitations in ability to maintain attention for extended periods of two-hour segments; marked limitations in Plaintiff's ability to sustain an ordinary routine without special supervision; marked limitations in ability to work in coordination with or proximity to others without being distracted by them; marked limitations in ability to independently make simple work-related decisions; extreme limitations in ability to complete a normal work day and work week without interruptions from psychologically-based symptoms; extreme limitations in ability to perform at a consistent pace without an unreasonable number and length of rest periods; marked limitations in her ability to accept instructions and to respond appropriately to criticism from supervisors; marked limitations in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and marked limitations in her ability to respond appropriately to changes in a routine work setting. Dr. Patel noted that the limitations he noted had

continued since the onset date of September 3, 2005, and based on his ongoing psychiatric evaluations of Plaintiff, he felt the restrictions could be expected to last at least 12 months or longer. TR 457-60. Finally, Plaintiff was examined by Dr. Hatfield on June 1, 2007. Dr. Hatfield opined that Plaintiff suffers from major depressive disorder, and rated her GAF at 50. TR 490.

Based upon the medical evidence of record, the ALJ posed various hypothetical questions to the vocational expert ("VE"). First, the ALJ asked the VE if Plaintiff would be able to perform her past relevant work, assuming that she has no exertional limitations, but has the following nonexertional restrictions:

> [F]rom the mental standpoint, she is capable of performing simple and/or detailed, but not complex instructions. The claimant is further capable of relating to coworkers or supervisors adequately in an object, focused work setting. Further, the claimant is capable of adapting to the changes and pressures of an ordinary or routine work setting.

TR 55-56. The VE testified that a person with these limitations could perform specific jobs, namely those of accounting, payroll, word processing and filing clerk. TR 56.

The ALJ then asked the VE to assume the following additional restrictions, which echoed Plaintiff's restrictions as assessed by Dr. Maryman.

> [T]he claimant is capable of understanding, performing, and carrying out simple to somewhat more complicated instruction tasks; able to sustain focus and concentration sufficiently to where she is able to

>      complete and carry out work assignments adequately across
>      a routine work schedule; able to interact appropriately
>      with fellow workers and supervisors; no more than
>      occasional contact with the general public; no more than
>      casual contact with the general public; no high pressure
>      of [sic] fast paced work atmosphere . . . .

TR 56. The VE testified that even assuming the additional restrictions, such a person could still perform the jobs of accounting, payroll, word processing, and file clerk. TR 57.

Finally, the ALJ posed the following hypothetical and question to the VE, which tracked Plaintiff's restrictions as assessed by Dr. Patel:

>      If the claimant were to have marked difficulty in
>      relating to other people; moderate difficulty remembering
>      work-like procedures; moderate difficulty carrying out
>      short and simple instructions; extreme difficulty
>      maintaining attention for extended periods of two hour
>      segments; extreme difficulty/ability to maintain regular
>      attendance and be punctual within customary tolerances;
>      marked difficulty/ability to sustain an ordinary work
>      routine without special supervision; marked
>      difficulty/ability to work in coordination with or [in]
>      proximity to others without being distracted by them;
>      marked difficulty of ability to independently make
>      simple, work-related decisions; extreme difficulty or
>      extreme limitation in ability to complete a normal work
>      day and work week without interruptions from
>      psychologically based symptoms. With these additional
>      restrictions, Dr. Miller, would a claimant be capable of
>      performing past relevant or any other work?

TR 57. The VE responded with a succinct, "no, sir." TR 58.

In determining that Plaintiff is capable of performing her past relevant work, the ALJ failed to give controlling weight to the opinion of her treating psychiatrist, Dr. Patel. The ALJ stated that while he had considered Dr. Patel's opinion, he found "that it is internally inconsistent with his own records and is

9

contradictory with the claimant's treatment records when considered from a longitudinal perspective and with both the consultative examination findings of Dr. Maryman and state agency determinations." TR 31. The ALJ also discredited the findings of consulting physician, Dr. Hatfield, stating that he found Dr. Hatfield's opinion "to be less persuasive because it was materially inconsistent with the record, not well supported, and inconsistent with claimant's testimony as to her daily activities." TR 31.

Substantial evidence did not support the ALJ's decision because the opinion of Plaintiff's treating physician was improperly disregarded. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30. Only when the treating physician's opinion is unsupported by medically acceptable clinical and laboratory diagnostic techniques and in inconsistent with other substantial evidence of record, will the treating physician's opinion not be afforded controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (1997); *see also Walters,* 127 F.3d at 530.

In determining that Plaintiff was not disabled and could in fact perform her past relevant work with only minor restrictions, the ALJ disregarded the medical opinions and reports of two physicians who actually examined Plaintiff, her treating physician, Dr. Patel, and examining physician, Dr. Hatfield. The ALJ relied instead on the medical opinion of consulting physician Dr. Maryman,

who did not have the benefit of treatment and assessment records from Plaintiff's treating physician, Dr. Patel, or examining physician, Dr. Hatfield. TR 31. The ALJ notes that the reports of state agency physicians Dr. Stodola and Dr. Ross are consistent with Dr. Maryman's findings, however, it appears as though Dr. Stodola only reviewed Dr. Maryman's report, and it is entirely unclear which records were reviewed by Dr. Ross in the preparation of his report. The opinions of state agency medical and psychological consultants are only given weight insofar as they are supported by evidence in the case record, and the opinions of Drs. Stodola and Ross are not consistent with the reports of Dr. Aptel and Dr. Hatfield. Social Security Ruling 96-6p, 1996 WL 374180.

20 C.F.R. § 404.1527(d)(2) requires an ALJ to "give good reasons" for not giving controlling weight to a treating physician's opinion. This Circuit has recognized the importance of this requirement.

> Pursuant to this regulation, an ALJ must give more weight to opinions from treating sources since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

Wilson, 378 F.3d at 544. In the instant matter, while the ALJ stated that he rejected Dr. Patel's opinion because "it is internally inconsistent with his own records and is contradictory with the claimant's treatment records when considered from a

11

longitudinal perspective and with both the consultative examination findings of Dr. Maryman and state agency determinations," TR 31, these are not the "good" reasons envisioned by 20 C.F.R. § 404.1527(d)(2). The ALJ does not explain how Dr. Patel's records are internally inconsistent, and the Court did not observe any such inconsistency upon its review of the record. Furthermore, the ALJ's statement that Dr. Patel's opinion is inconsistent with Plaintiff's longitudinal record is itself unsupported by the record. Dr. Patel's opinion that Plaintiff suffers from extreme limitations and has a GAF of 50 is supported by Plaintiff's January 2007 treatment records from ADANTA and the report of Dr. Hatfield's June 1, 2007, examination of Plaintiff, in which she also found that Plaintiff has a GAF of 50 and suffers from extreme limitations which preclude employment. While Dr. Patel's opinion is not consistent with the opinions of Drs. Maryman, Stodola, and Ross, Drs. Maryman and Stodola did not have the benefit of reviewing Dr. Patel's opinion, and the record does not indicate which records were reviewed by Dr. Ross.

While the Court could simply remand the matter to the ALJ with directions to provide good reasons for his rejection of Dr. Patel's opinion, such an exercise would be futile, as the record indicates that there was not substantial evidence to support the ALJ's decision.

**V. CONCLUSION**

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That Defendant's motion for summary judgment [Record No. 7] shall be, and the same hereby is, **DENIED;**

(2) That Plaintiff's motion for summary judgment [Record No. 6] shall be, and the same hereby is, **GRANTED;** and

(3) That the Commissioner's final decision shall be, and the same hereby is, **VACATED AND REMANDED** to the Commissioner with directions to enter an appropriate award of benefits.

This the 1st day of June, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge